ORDERED in the Southern District of Florida on  JAN 1 8 2008



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                            Chapter 11

PERALTA FOOD CORP., a Florida Corporation          Case No. 07-16508-BKC-AJC
d/b/a Mar & Tierra Supermarket,

      Debtor.
_____/

**MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTION TO REJECT SETTLEMENT AGREEMENT AS EXECUTORY CONTRACT**

THIS MATTER came before the Court on Thursday, November 15, 2007 upon Peralta Food Corporation's (the "Debtor") Motion to Reject Settlement Agreement as Executory Contract (C.P. #8) (the "Motion to Reject" or "Motion"). The Court held a hearing on the Motion on November 15, 2007, at which respective counsel for the Debtor and Roberto Peralta, a creditor of Debtor's estate, presented arguments to the Court related to each parties' respective positions. At the conclusion of the hearing, the parties stipulated to certain material facts and the Court announced its intention to rule on the Motion as a matter of law without the need for further discovery or an evidentiary hearing.

The Court has reviewed and considered the Motion, the relevant record in Debtor's bankruptcy case, and the arguments and representations of counsel at the hearing and is otherwise fully advised. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

On August 15, 2007 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief under title 11 of the United States Code (the "Bankruptcy Code").

Initially, the Debtor filed the Petition as a "bare bones" Petition. In addition to filing the Petition, the Debtor concurrently filed (i) a Motion to Reject a Settlement Agreement executed between the Debtor and Roberto Peralta (the "Motion to Reject"); and (ii) an adversary proceeding (the "Adversary Proceeding") against Roberto Peralta purportedly seeking to avoid various transfers made by the Debtor to Roberto Peralta prior to the Petition Date pursuant to the terms of a settlement agreement executed by the Debtor and Roberto Peralta over a year prior to the Petition Date.

Prior to the filing of the bankruptcy case, Mr. Peralta was employed by the Debtor. On December 23, 2005, Mr. Peralta filed a Complaint against the Debtor and Maximo Peralta to recover damages under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* in a case styled as *Roberto Peralta v. Peralta Food Corp. and Maximo Peralta, Case No. 05-23296-CIV-LENARD/TORRES* pending in the Southern District of Florida (the "Peralta Action"). In response to the lawsuit, Maximo hired attorney Spencer Emison to represent the Debtor and him. On May 5, 2006, Attorney Emison on behalf of the Debtor and Maximo filed an answer and affirmative defenses, but thereafter failed to respond to the discovery scheduling order, failed to comply with numerous pending discovery requests (including failing to appear at the scheduled

2

deposition of Maximo), and even worse, failed to comply with repeated Orders of the District Court.

On June 27, 2006, the District Court entered an order to show cause, directing Attorney Emison to file the joint scheduling report by June 30, 2006 or else suffer the striking of Defendants' answer and affirmative defenses and the entry of a default judgment. On July 11, 2006, after Attorney Emison again failed to comply, the District Court entered a default judgment against the Debtor and Maximo, jointly and severally. On July 13, 2006, Roberto moved for final default judgment upon the submission of an affidavit alleging $372,585.60 in damages.

On July 19, 2006, after numerous failures by the Debtor and Maximo Peralta to respond to Roberto Peralta's discovery requests, the District Court entered a Default Final Judgment in the amount of $372,585.60 against the Debtor and Maximo Peralta (the "Default Final Judgment"); and, on August 1, 2006, the District Court issued a writ of execution (the "Writ of Execution") to allow Roberto Peralta to levy against property belonging to Maximo Peralta and the Debtor to satisfy the Default Final Judgment.

On or about September 1, 2006, Roberto Peralta attempted to levy against the Debtor's assets pursuant to the Writ of Execution. To avoid Roberto Peralta's levy against all of the Debtor's assets, the Debtor, Maximo Peralta, and Roberto Peralta executed a settlement agreement (the "Settlement Agreement")[1] whereby Roberto Peralta agreed to stay the execution upon Debtor's and Maximo Peralta's assets in exchange for their agreement to satisfy the Default Final Judgment pursuant to a mutually agreed upon payment plan.

Pursuant to the terms of the Settlement Agreement, the Debtor and Maximo Peralta agreed to pay Mr. Peralta (i) a lump sum payment in the amount of $50,136.00; and (ii) payments

---

[1] A true and correct copy of the Settlement Agreement is attached to Court Paper No. 8 as Exhibit "A."

in the amount of $2,500.00 per week commencing October 2, 2006 until the Default Final Judgment was satisfied. *See* Settlement Agreement at ¶1(A)(B), and (D). The Settlement Agreement further provided that: "[b]y signing [the] [Settlement] Agreement and causing [Roberto Peralta] to forego collection proceedings, the [Debtor and Maximo Peralta] acknowledge the Default Final Judgment as a valid judgment and…**agree not to file or attempt to get the [District] Court to vacate said judgment**." *See* Settlement Agreement at ¶1(E)(emphasis added).

On September 28, 2006, the Debtor and Maximo Peralta filed (i) a Motion to Set Aside and Vacate the Default and Final Default Judgment (the "Motion to Vacate")(District Court D.E. #41); and (ii) a Motion to Stay Compliance with Settlement Agreement (the "Motion to Stay")(District Court D.E. #40). However, on June 15, 2007, Magistrate Torres entered an Order denying both Motions (the "Magistrate Order"). Although sympathetic to the Debtor and Maximo Peralta under the circumstances, the Magistrate Order expressly found that both the Default Final Judgment and the Settlement Agreement are valid and enforceable. *See* Magistrate Order at P. 16 a true and correct copy is attached as Exhibit "B" to Court Paper No. 8.

On June 29, 2007, the Debtor and Maximo filed procedural objections (the "Objections") to the Magistrate Order, but on August 21, 2007, the District Court entered an Order overruling the Objections and affirming the Magistrate's Order denying the Motion to Vacate and Motion to Stay against Maximo Peralta. The District Court stayed ruling on the Debtor's objection to the Magistrate Recommendation due to Debtor's bankruptcy filing. However, the District Court expressly stated that, "though [its] findings relate only to the Motions of Defendant Maximo Peralta, the Court notes that the exact same circumstances apply to Defendant Peralta Food Corp., and that its findings on such motion with respect to [Peralta Food Corp.] **would likely be**

4

**identical**." *See* District Court's *Order affirming Magistrate Judge's Order on Defendant's Motion to Stay Compliance, denying [40] Motion to Stay Compliance, adopting [90-2] Magistrate judge's Report and Recommendation on Defendant's Motion to Set Aside Default, and denying Defendant's Motion to Set Aside Default* dated August 21, 2007 (the "Order Overruling Maximo Objection and Affirming Denial of Motion to Vacate and Motion to Stay")(emphasis added).

The contested matter initiated by the Motion under Federal Rule of Bankruptcy Procedure 9014 involves the sole issue of whether the Settlement Agreement is an executory contract that is subject to rejection by the Debtor pursuant to 11 U.S.C. §365.

## DISCUSSION

A. **THE SETTLEMENT AGREEMENT IS NOT AN EXECUTORY CONTRACT WITHIN THE MEANING OF 11 U.S.C. §365 UNDER THE "COUNTRYMAN" DEFINITION**

1) **The "Countryman" Definition of an Executory Contract**

Section 365(a) of the Bankruptcy Code authorizes the trustee of the bankruptcy estate to "assume or reject an executory contract." These powers may also be exercised by a debtor-in-possession pursuant to 11 U.S.C. §1107(a). However, the power to assume or reject a contract may only be exercised with respect to an agreement that constitutes an "executory contract" within the meaning of 11 U.S.C. §365.

Congress did not include a definition of the term, "executory contract" in the Bankruptcy Code. In the legislative history to section 365, however, Congress indicated that while "there is no precise definition of what contracts are executory," the term "generally includes contracts on which performance remains due to some extent **on both sides**" (emphasis added). H.R. Rep. No. 595, 95th Cong., 1st Sess. 347 (1978 U.S.C.C.A.N. 5963, 6303); S. Rep. No. 989, 95th Cong., 2d

5

Sess. 58 (1978 U.S.C.C.A.N. 5787, 5844). *See also N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 522 n.6 (1984) (although Code has no express definition, legislative history indicates the scope of "executory contract"). At least two Florida Courts have recognized the Countryman definition and have defined an "executory contract" within the meaning of 11 U.S.C. §365 as: "a contract [] where performance remains due, to some extent, by all contracting parties." *See In re Waldron*, 36 B.R. 633, 636 n.2 (Bankr. S.D.Fla. 1984); *See also; In re Charter Co.*, 52 B.R. 267, 270 (Bankr. M.D.Fla. 1985).

That definition was formulated by Professor Vern Countryman in his 1973 law review article on executory contracts. *See,* Countryman, 57 Minn. L. Rev. at 460. Since the article was written, the "Countryman" definition has been adopted by most courts as the majority view for how an executory contract is defined in the context of section 365. *See, e.g., Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1045 (4th Cir. 1935), cert. denied, 475 U.S. 1057 (1986); *Fenix Cattle Co. v. Silver (In re Select-A-Serv)*, 625 F.2d 290, 292 (9th Cir. 1980). This explicit definition means that, for an agreement to constitute an executory contract within the meaning of section 365, not only must both parties to the agreement have unperformed obligations **at the time of the petition**, but those obligations must be such that their failure must cause a material breach of the agreement which relieves the non-breaching party from performing. *See In re Sudbury. Inc.*, 153 B.R. 776, 778 (Bankr. N.D. Ohio 1993) (Countryman definition requires not only that executory obligations exists, but that the obligations must be such that nonperformance would excuse performance by the other party). As analyzed by a leading treatise in bankruptcy law:

> Professor Countryman observed that if the debtor fully performed before the commencement of the case, and only the other party's performance was left to be done, the contract should not be viewed as executory because the debtor's right to

6

receive the other party's obligation would simply be an asset of the estate. If the contract were considered an executory contract, the trustee might inadvertently reject the contract and forfeit the asset. Moreover, the provision of the bankruptcy law that views rejection of an executory contract as a breach entitling the other party to a claim for damages would make no sense if the debtor already fully performed.

**Similarly, if the other party fully performed and only the debtor's performance remained to be done, the estate already has whatever benefit is to be gained from the contract. The other party has a claim against the estate for breach of contract if the debtor or the estate does not perform, but that party cannot deprive the estate of the performance that the estate has already received. However, if this were considered an executory contract, the trustee might assume the contract and convert the other party's claim to a first priority administrative claim. Since the estate could receive no benefit from such a conversion in the status of the claim, it seems appropriate to simply bar the trustee from ever assuming such a contract by treating the contract as nonexecutory.**

*Collier on Bankruptcy, 15th Edition Revised,* P 365.02 (emphasis added).

2) **The Right to Collect Money Under a Settlement Agreement is Not Enough to Make an Agreement Executory**

With respect to agreements where one party's obligation is to collect money, the majority of courts have concluded that such agreements are not executory contracts. For example, in *In re Norquist*, 43 B.R. 224, 228 n.2 (Bankr. D. Wash. 1984) (emphasis added), the Court concluded:

Contracts historically not treated as executory are those which evidence an unpaid debt. Thus, when the debtor owes a creditor $100.00 whether that debt is secured or unsecured, it is not an executory contract and the creditor is left with his right to file a claim against the estate. Likewise, when the debtor is owed money by another, the debtor has a claim against that individual, but it is not treated as an executory contract. Such contracts have **never been treated as executory for bankruptcy purposes** and their treatment as such would only cause procedural problems which might perpetrate inequities among creditors.

Similarly, in *In re Structurlite Plastics Corp.*, 86 B.R. 922, 926 (Bankr. S.D.Ohio 1988), the Court stated that "[w]hile the definitional methodologies clearly differ from court to court, **most**

7

**courts agree that where the only remaining performance to be rendered by a party to an agreement is the payment of money the contract is not deemed to be executory within the meaning of §365.**" (emphasis added).

More recently, the Third Circuit Court of Appeals analyzed this issue in *In re Columbia Gas Systems*, 50 F.3d 233 (3rd Cir. 1995). In *Columbia Gas Systems,* a class of claimants filed an action against the debtor. *Id.* The class claimants alleged that the debtor breached the gas purchase contracts with the claimants by paying less than the maximum price after the debtor invoked a cost recovery clause under the contracts. *Id.* at 236. The case settled, and the parties entered into a settlement agreement whereby the class claimants were deemed to release and discharge the debtor in exchange for a settlement payment. *Id.* The settlement required the debtor to deposit $30 million into an escrow account in settlement of all of the claims through two $15 million dollar payments. *Id.* The Debtor proceeded to make the first payment, but not the second payment, and then filed a Chapter 11 petition.

In holding that the settlement agreement was not executory, the Third Circuit began with the legislative history of §365. *Id.* at 238. Like other courts before it, the Third Circuit held that the definition of executory in the legislative history could cut too broadly, since, in the words of the court, "it is the rare agreement that does not involve unperformed obligations on either side." *Id.* The Third Circuit held that an executory contract in "bankruptcy is best recognized as a combination of assets and liabilities to the estate; the performance the non-bankrupt owes to the debtor constitutes an asset, and the performance the debtor owes the non-bankrupt is a liability." *Id.* The Third Circuit concluded that **simply having the right to collect money under an agreement is not sufficient to rise to the level of performance in analyzing whether the agreement is executory.** *Id.* at 243 (emphasis added).

Using a similar analysis, Judge Jennemann recently reached the same conclusion in her decision in *In re Gencor Industries, Inc.*, 298 B.R. 902 (Bankr. M.D.Fla. 2003). *Gencor* involved a consulting agreement between the debtor, a manufacturer of large road buildings, and a creditor which was the holder of a patent for technology used in a counter flow asphalt plant. *Id.* at 904. The debtor agreed to provide consulting expertise in the development of a counter asphalt plant and in exchange agreed not to use or disseminate any invention or new information it learned during the consulting process. *Id.* The creditor brought suit against the debtor, alleging that the debtor breached the consulting agreement when the debtor marketed its own version of a counter flow asphalt plant. *Id.* at 905. The parties agreed to resolve their dispute, and entered into a settlement agreement where the debtor paid the creditor $1,200,000 in consideration for an irrevocable license to use the creditor's patent and for a general release of the debtor from any liability from use of the creditor's patent up until the date of the settlement agreement. In addition, the debtor agreed to pay the creditor a $30,000 per use royalty for each new asphalt plant the debtor set up which utilized the creditor's patent.

Subsequent to signing the settlement agreement, the debtor did not make any royalty payments to the creditor because the debtor contended that it never utilized the creditor's patent. Thereafter, an involuntary Chapter 11 petition was filed against the debtor. During the bankruptcy proceedings, the creditor treated the settlement agreement as a rejected executory contract and as such filed an adversary action against the debtor alleging claims that largely mirrored the previous action filed by the creditor against the debtor. *Id.* at 906.

In order to decide whether the settlement agreement was rejected by the debtor, Judge Jennemann had to first conclude whether the settlement agreement constituted an executory agreement that could be assumed or rejected by the debtor. Judge Jennemann concluded that the

only obligations owed by the debtor to the creditor were the payment of a royalty fee in the event that the debtor used the creditor's patent to build an asphalt plant. In addition, Judge Jennemann found that the releases executed by the creditor were mere conditions to payment and not "obligations that if unperformed would result in a material breach of the agreement." *Id.* at 912. As such, Judge Jennemann held that **a mere right to payment, alone, is not enough to make a settlement agreement an executory contract** and ruled in favor of the debtor on the issue. *Id.* at 913 (emphasis added).

3) **Under the "Countryman" Definition of an "Executory Contract" the Settlement Agreement between the Debtor and Roberto Peralta is not executory**

On the Petition Date, Roberto Peralta had no obligations remaining under the Settlement Agreement, while the Debtor still had the obligation of making payments to Roberto Peralta due under the Agreement. Roberto Peralta agreed to allow the Debtor to pay off the Default Judgment pursuant to an agreed upon payment plan (the "Payment Plan") in exchange for Roberto Peralta's agreement to forego his right to levy against all of Debtor's assets. The Settlement Agreement released the Debtor from all obligations to comply with the Writ of Execution and provided that the Debtor's sole obligation was to satisfy the Default Judgment in accordance with the Payment Plan. The only obligation left outstanding under the Settlement Agreement is Roberto Peralta's right to payment under the Settlement Amount. Because only one party to the Settlement Agreement had obligations under the Settlement Agreement as of the Petition Date, to wit, the Debtor, the Settlement Agreement cannot be considered an executory contract based upon the authority cited. Roberto Peralta enjoys a mere right to payment, alone, which is not enough to make the Settlement Agreement an executory contract.

B) **EVEN UNDER THE "FUNCTIONAL ANALYSIS" DEFINITION OF AN "EXECUTORY CONTRACT" THE SETTLEMENT AGREEMENT BETWEEN THE DEBTOR AND ROBERTO PERALTA IS NOT EXECUTORY**

While the Countryman definition is the majority view for defining an executory contract under section 365, some courts have adopted a "functional" analysis to determine if a contract or agreement is executory in nature. The Debtor asserts this Court should follow the "functional analysis" in defining whether a contract is indeed executory, citing *Sipes v. General Development Corp. (In re General Development Corp.)*, 177 B.R. 1000, 1012 (Bankr. S.D.Fla. 1995), aff'd, 84 F.3d 1364 (11th Cir. 1996). The Debtor refers this Court to that portion of the opinion which states that "even though there may be material obligations outstanding on the part of only one of the parties to the contract, it may nevertheless be deemed executory under the functional approach if its assumption or rejection would ultimately benefit the estate and its creditors." *Id.* at 1374 *citing In re Arrow Air, Inc.*, 60 B.R. 117, 121-122 (Bankr. S.D.Fla. 1986). "[U]nder the functional approach the purpose for allowing the debtor in possession to reject or assume an executory contract 'is to enable ... a troubled debtor to take advantage of a contract that will benefit the estate by assuming it or alternatively, to relieve the estate of a burdensome contract by rejecting it.' " *Id.* at 122.

Even assuming, *arguendo*, that this Court followed the approach followed in *Sipes*, the Settlement Agreement in this case would still not constitute an "executory contract" under section 365 because the Debtor would derive no further benefit from rejecting the Settlement Agreement. Rejection of the Settlement Agreement does not rescind the Agreement or the obligations found therein, but rather constitutes nothing more than a pre-petition breach of the Settlement Agreement. *In re Hughes*, 166 B.R. 103, 105 (Bankr. S.D.Ohio 1994); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687 (Bankr. S.D.N.Y. 1992)(rejecting executory

contract gives rise to remedy in nondebtor party for breach of rejected contract, typically a right to money damages ascertainable as general unsecured claim in bankruptcy case; rejection has absolutely no effect upon contract's continued existence, and contract is not cancelled, repudiated, rescinded, or in any other fashion terminated). The Settlement Agreement provides that in the event the Debtor breaches the Settlement Agreement, Roberto Peralta shall be entitled to a judgment in the amount of the currently owed debt (with due consideration to payments that have been made) and the Debtor shall be liable to pay "all reasonable costs and expenses incurred by [Roberto Peralta] in the event of a breach in an action to enforce [the Settlement] Agreement, including reasonable attorney's fees and costs." Settlement Agreement at ¶2.

The Debtor will not be able to recover the funds being held in the registry of the court, pursuant to the Settlement Agreement and court orders, because rejection of the Settlement Agreement does not cancel, repudiate, or rescind the Settlement Agreement. Rejection of the Settlement Agreement will not affect the validity of Roberto Peralta's Default Final Judgment against the Debtor and Debtor's obligations thereunder. *See In re Nugent*, 254 B.R. 14 (Bankr. D.N.J. 1998). The deposit of the funds into the registry of the court earmarked said funds for the payment obligation owing to Roberto Peralta, and thus create a secured claim on those funds in favor of Roberto Peralta. Rejection would not entitle the Debtor to the use of those funds. *See In re Pettit*, 217 F.3d 1072, 1078 (9th Cir. 2000) (funds deposited in court registry were not property of the debtor's estate where debtor retained no legal or equitable ownership interest over the funds once judgment was entered). Therefore, under the functional approach, the Settlement Agreement does not constitute an executory contract within the meaning of 11 U.S.C. §365 because the Debtor's estate is not entitled to the funds deposited with the court and accordingly stands to gain nothing from the rejection of the Settlement Agreement.

Based upon the foregoing, it is

**ORDERED AND ADJUDGED** that the Motion to Reject Settlement Agreement as Executory Contract is DENIED.

###

Copies furnished to:

Eyal Berger, Esq.
KLUGER, PERETZ, KAPLAN & BERLIN, P.L.
Attorneys for Roberto Peralta
Miami Center, Seventeenth Floor
201 So. Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 379-9000
Facsimile:  (305) 379-3428

Eyal Berger, Esq. is directed to serve conformed copies of this Order on all interested parties and file a Certificate of Service with the Court.